# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

RONALD RAY LANGDON,

v.                                                          Case No. 8:02-cr-122-T-24EAJ
                                                                    8:06-cv-959-T-24EAJ

UNITED STATES OF AMERICA,

_____/

## <u>ORDER</u>

This cause is before the Court upon Defendant Ronald Ray Langdon's ("Langdon")

Third Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. §

2255[1] (CV Dkt. 16; CR. Dkt. 705)[2], the United States's ("Government") Response in

Opposition (S Dkt. 3), and Langdon's reply thereto (CV Dkt. 21).

---

[1] Langdon signed his Motion to Vacate, Set Aside or Correct Sentence ("motion to vacate") on May 15, 2006, and it was received by the Court on May 22, 2006. (CV Dkt. 1). By order entered on May 25, 2006, the Court denied Langdon's motion without prejudice and directed him to file an amended motion containing a statement of facts supporting each of his claims. (CV Dkt. 3). On June 13, 2006, the Court received Langdon's first amended motion to vacate. (CV Dkt. 4). By order entered on June 15, 2006, the Court denied the first amended motion without prejudice for failure to sign and date it as required and directed Langdon to file a second amended motion to vacate. (CV Dkt. 6). Langdon signed his second amended motion to vacate on June 22, 2006, and it was received by the Court on July 5, 2006. (CV Dkt. 7). It appearing to the Court that Langdon did not include all of the pages of the second amended motion in his submission to the Court, by order entered on July 6, 2006, the Court directed Langdon to file the omitted pages or inform the Court that he did not wish to do so. (CV Dkt. 8). Langdon subsequently signed another copy of his second amended motion to vacate containing the omitted material on August 4, 2006, and it was received by the Court on August 11, 2006. (CV Dkt. 16). This second submission of the second amended motion to vacate, designated on the docket in the instant civil case as the third amended motion to vacate is the operative motion in this case. (CV Dkt. 16). The Court notes that the second amended motion to vacate (CV Dkt. 7) still appears as a pending motion on the docket. To the extent that it is superseded by the third amended motion to vacate, the Court will consider the third amended motion only.

 The Court will consider, in conjunction with the third amended motion to vacate, the supporting memoranda Langdon filed with his original and first amended motions to vacate. (CV Dkts. 2, 5).

[2] For purposes of this Order, references to the docket in the underlying criminal case, 8:02-cr-122-T-24EAJ, are designated as "CR Dkt. __." References to sealed documents filed in the criminal case are designated as "S Dkt. __." References to the docket in the instant civil case are designated as "CV Dkt. __."

# Background

Langdon and his codefendants were charged in a one count superseding indictment with conspiracy to possess with intent to distribute cocaine and marijuana. (CR Dkt. 47 [superseding indictment]; CR Dkt. 682 [Opinion of the United States Court of Appeals for the Eleventh Circuit]). The opinion of the Eleventh Circuit affirming Langdon's conviction and sentence sets out the factual background of the criminal case as follows:

> Albert Terrill Jones, Elgin Ray Lofton, Luther Ford, Ronald Ray Langdon, and Michael Wayne Cobb were indicted on charges of conspiracy to possess with intent to distribute five kilograms of cocaine, fifty grams of crack cocaine, and 100 kilograms of marijuana, in violation of section 841(a)(1) of Title 21 of the United States Code. The conspiracy involved participants in California, Nevada, Tennessee, and Florida who shipped drugs and money across the country by parcel services. The conspirators used text message pagers to communicate with each other.
>
> After the conspiracy was discovered, government agents identified Marquette McCalebb as the leader of a major part of the conspiracy. Special Agent Kevin McLaughlin of the Drug Enforcement Agency learned from a former conspirator that the conspirators communicated through text message pagers. McLaughlin contacted Skytel Communications, the service provider for the pagers. McLaughlin also contacted Federal Express, the United States Postal Service, Airborne Express, and DHL regarding shipments of drugs by mail.
>
> McCalebb was arrested in California, and his home was searched. Agents discovered a large conspiracy ring that involved numerous participants; Jones, Langdon, Lofton, Ford, Cobb, and others. Each defendant had a different role in the conspiracy. Ford mailed packages containing drugs to Octavius Henderson and Jones in Florida. Ford received $50 to $100 for each package shipped. Langdon supplied McCalebb with five to ten kilograms of cocaine per week. Lofton, in Las Vegas, received drug proceeds on behalf of McCalebb. Cobb and Jones, in Florida, received packages containing drugs.
>
> Skytel informed McLaughlin that it maintained records of actual text messages sent by pager, and Skytel would disclose the records if it received an administrative subpoena. McLaughlin, therefore, served Skytel with a subpoena for records of text messages sent on the defendants' pagers. McLaughlin did not obtain a warrant. McCalebb, Jones, Cobb, and Langdon moved to suppress the text message records, and the district court determined that the defendants established a subjective expectation of privacy in the text messages and suppressed the records.

McCalebb pleaded guilty to conspiring to possess with intent to distribute five kilograms or more of cocaine in accordance with a written plea agreement, and agreed to cooperate with the government. At the request of the government, McCalebb's attorney obtained records pertaining to McCalebb's pager from Skytel, which were forwarded to the government. Over the other defendants' objections, the district court ruled that McCalebb would be permitted to testify regarding text messages he had sent to and received from his co-defendants. McCalebb was the star witness of the government.

(CR Dkt. 682) (citations omitted).

Langdon retained attorney Eric J. Kuske ("Kuske") to represent him. Kuske entered his appearance on May 16, 2002. (CR Dkt. 91). Over the next several months, Kuske filed a motion for Langdon's release and was present at several status conferences held by the Court. (CR Dkts. 147, 169, 178, 222). On November 29, 2002, Kuske filed three motions to suppress on Langdon's behalf, seeking to suppress evidence seized from Langdon's residence, statements made by Langdon, and various text messages. (CR Dkts. 266, 267, 268). The Court ultimately denied each of these motions. (CR Dkts. 275, 295, 329). Kuske later filed a motion for hearing/rehearing on the motion to suppress the text messages (CR Dkt. 326 ) which was granted by the Court. (CR Dkt. 332).[3] Kuske also filed a motion for rehearing of the denial of Langdon's motion to suppress the evidence seized from his residence (CR Dkt. 345) which was denied. (CR Dkt. 436).

During the pendency of Langdon's case, the Government filed a notice advising the Court of Kuske's potential conflict of interest and recommended a *McClain*[4] hearing be

---

[3] This motion was originally filed on behalf of codefendant Marquette McCalebb. (CR Dkt. 199). By oral motion at a status conference held on December 11, 2002, counsel for Langdon moved to adopt McCalebb's motion. The Court granted this motion. (CR Dkts. 295, 332).

[4] In *United States v. McClain*, 823 F.2d 1457, 1462-63 (11th Cir.1987), the United States Court of Appeals for the Eleventh Circuit held that failure to advise a defendant that his attorney was under investigation before and during his trial by the same United States Attorney's Office that was prosecuting the defendant deprived him of a fair trial where the defendant was not advised of the conflict of interest.

conducted.  (S Dkt. 7).  The Court conducted a *McClain* hearing on February 19, 2003.  (S

Dkts. 10, 16).  At the hearing, the Court advised Langdon of the potential conflict of interest,

and Langdon advised the Court that he wished to have new counsel.  (S Dkt. 16).

Following the hearing, attorney Daniel Hernandez ("Hernandez") was appointed to

represent Langdon by order dated February 21, 2003.  (Id.; CR Dkt. 381).

Hernandez entered his appearance and moved to adopt the motions of Langdon's

codefendants, the grounds set forth therein, the memoranda of law filed in support of each

of those motions and all evidence adduced in support thereof to the extent that the

memoranda and evidence were beneficial and not adverse to Langdon.  (CR. Dkts. 383,

384).  This motion was ultimately denied.  (CR Dkt. 385).  At a status conference held on

March 19, 2003, Hernandez orally moved for a continuance of the trial date due to his

recent appointment as counsel for Langdon.  (CR Dkt. 403).  This motion was granted and

trial was continued.[5]  (Id.).

Trial ultimately commenced on June 9, 2003.  Following the jury trial, Langdon was

found guilty of the conspiracy charge.  (CR Dkt. 484).  On October 3, 2003, Langdon was

sentenced to a term of imprisonment of 360 months followed by five years supervised

release and a special monetary assessment of $100.00 (CR Dkt. 546).  The United States

Court of Appeals for the Eleventh Circuit affirmed Langdon's conviction and sentence on

September 20, 2005.  *See* CR Dkt. 281; *United States v. Jones*, 149 Fed.Appx. 954  (11th

Cir. 2005).  The mandate issued October 20, 2005.  The instant § 2255 motion to vacate

is timely.  *See supra*, ftnt. 1.

---

[5]  At this point in the case, trial was set to commence on April 7, 2003.

## Standard of Review

Title 28, United States Code, Section 2255 provides the framework for reviewing a federal prisoner's sentence under four circumstances: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Collateral relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988). Generally, only constitutional claims, jurisdictional claims and claims of error so fundamental as to have resulted in a complete miscarriage of justice are cognizable in a § 2255 motion for relief. *See United States v. Addonizio*, 442 U.S. 178, 184-86, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

In the instant motion to vacate, Langdon raises the following claims for relief:

(1)    he was sentenced in violation of his Sixth Amendment rights where the district court enhanced his sentence with facts not presented to the jury or admitted by him;

(2)    the Government violated the "knock and announce" rule of 18 U.S.C. § 3109 when executing the search warrant of his home;

(3)    the district court erred by allowing evidence of text message transcripts in violation of his Fourth Amendment rights;

(4)    his attorney rendered ineffective assistance in failing to raise issues and request rehearings in the district and appellate courts in violation of the Sixth Amendment; and

(5)    the grand jury "unconstitutionally admitted evidence unlawfully obtained in violation of the Electronic Communication Privacy Act."

5

(CV Dkt. 16).

## Standard for Ineffective Assistance of Counsel Claims

The Sixth Amendment protects a defendant's right to the effective assistance of counsel during criminal proceedings against him. To prevail on a claim of ineffective assistance of counsel, Langdon must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" considering the circumstances as they existed at the time of representation. *Id.* at 687-88. This requires him to overcome a strong presumption that his attorney's performance was within the range of competence demanded of attorneys defending criminal cases. *Id.* at 689. Second, even if Langdon can show that counsel performed incompetently, he must also show that he was prejudiced in such a manner that, but for counsel's errors, there exists a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 688, 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Id.* at 694.

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Van Poyck v. Fla. Dept. of Corrections,* 290 F.3d 1318, 1322 (11th Cir. 2002) *(citing Chandler*, 218 F.3d at 1315). Counsel's trial strategy cannot

be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler,* 218 F.3d at 1314 (*quoting Strickland,* 466 U.S. at 689). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Moreover, where the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment. As counsel's trial strategy is presumptively reasonable, the determination is not "that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not do a specific act." Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Chandler,* 218 F.3d at 1314-15.

### Discussion

A review of the record demonstrates that, for the reasons stated herein, Langdon's motion to vacate must be DENIED.

### Ground One

In his first claim, Langdon contends that his 360 month sentence is erroneous and that "[t]he correct sentence range should of [sic] been between 168-210 months." (CV Dkt. 16). He asserts that "the district court got this sentence by enhancing petitioner [sic] with facts not presented to a jury or admitted by the petitioner." (Id.). He further asserts in his supporting memorandum (CV Dkt. 2) that his sentence was not measured against the

factors set forth in 18 U.S.C. § 3553(a).[6]  Citing the decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005)[7], Langdon claims the Court erred by failing to regard the sentencing guidelines as advisory rather than mandatory.

It appears that the substance of Langdon's claim is that the Court improperly applied

---

[6] In his supporting memorandum, Langdon points to the follows sections of 18 U.S.C. § 3553(a) to support his claim:

**§ 3553.  Imposition of a sentence**

**(a) Factors to be considered in imposing a sentence.** – The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider –
...

(2) the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

...

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553 (a)(2)(A), (B), (C), (a)(6).

[7]In *Apprendi*, the United States Supreme Court held that "[o]ther that the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt."  *Apprendi*, 430 U.S. at 490.  In *Blakely*, the Supreme Court applied *Apprendi* to a state sentencing guidelines sentence and held "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  *Blakely*, 542 U.S. at 303.  In *Booker*, the Supreme Court extended the rule of *Blakely* and held that the mandatory application of the federal sentencing guidelines was incompatible with the Sixth Amendment's guarantee of a right to a jury trial.  *See Booker*, 543 U.S. at 245-46; *Sinisterra v. United* States, 2005 WL 2106086 at *1 (M.D. Fla., Aug. 31, 2005).  *Booker* required that the provisions of the Federal Sentencing Act that made the guidelines mandatory be severed and excised, thereby rendering the guidelines "effectively advisory."  *See Booker*, 543 U.S. at 245.  Notwithstanding, the Supreme Court held that a district court is required to consider the guidelines when sentencing a defendant within the statutory ranges set by Congress.  *Id.*; *see also United States v. Guy*, 2005 WL 1515453 at *3 (S.D. Tex., June 23, 2005).

two sentencing enhancements that resulted in his receiving the 360 month sentence. The presentence investigation report ("PSI") prepared in Langdon's case recommended that he receive a two level increase for two firearms located in his residence during the search of the residence, a three level increase based on Langdon's role in the offense, and a two level increase for obstruction of justice. (CR Dkt. 576, pp. 7-8). At the sentencing hearing held on October 3, 2003, the Court determined that it would not impose the three level enhancement for Langdon's role in the offense, but that the obstruction of justice and firearm enhancements were appropriate and applied them in calculating Langdon's guidelines sentencing range under the United States Sentencing Guidelines ("Guidelines"). (CR Dkt. 576, pp. 33-36).[8] Langdon challenged the application of the firearm and

---

[8] Following argument by counsel, the Court held as follows:

THE COURT:   All right.

With respect to the drug amounts, the Presentence Report suggests the appropriate is [sic] base offense level 36. You know, I cannot find any justifiable reason for holding Mr. Langdon responsible for any more drugs than Mr. McCalebb, and Mr. McCalebb's offense level was a 34.

So I'm going to find that the appropriate offense level is a 34, essentially I guess, sustaining the objection.

As far as the firearm is concerned, the – there were two firearms located, as I understand from the Presentence Report, one might have been in a hidden – hidden in a closet, one was on the bed. There was money found in – nearby. There were drugs found in the residence. A substantial amount of drugs found in the residence. It is not clearly improbable that the firearm was connected with the drug trafficking offense.

As far as the argument that it's outside the – the date of the Indictment, or the dates in the Indictment, there's no doubt that the – if I look strictly at the Indictment itself, it does end, I believe, in March.

And let me just see if I can find the exact date.

March 22, 2002. And the search of Mr. Langdon's residence was April the 11th, 2002.

What would that be, maybe 21 days after the dates alleged in the Indictment. I don't

obstruction of justice enhancements on direct appeal.[9]

_____

> think that that is a problem, and I felt that way, I think, when I allowed testimony at trial. It's relevant conduct, he should be held accountable, and I think that is correctly scored.
>
> As far as his role in the offense, you know, I've struggled perhaps with this more than any other – any other section or any other objection. It's clear that Mr. Langdon was at least one of Mr. McCalebb's – maybe the major one – Mr. McCalebb's suppliers.
>
> It's also clear that the only conceivable reason for giving him a managerial role, I guess, would be that, number one, packages of money were sent to his residence. He – he directed I guess – or recruited, I guess would be the argument, Mr. Navarro. But I'm not sure he did actually recruit him.
>
> If I look at number – note number four in the – I'm sorry.
>
> If I look at 3B1.1, aggravating role, and if I read B, it says: If the defendant was a manger or supervisor, and the criminal activity involved five or more participants or otherwise was extensive, increase by three levels.
>
> And there's no doubt that it involved five or more participants. So, we're just looking at whether or not he was a manger or supervisor.
>
> If I look at application note four, it says: Factors the Court should consider include the exercise of decision-making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
>
> If I compare Mr. Langdon with – with Mr. Jones and Mr. McCalebb, he did not have the – the exercise of authority over others that either of those persons did. Recruitment would be perhaps an exaggeration as far as what happened with Mr. Navarro. He certainly did have contact with Mr. Navarro.
>
> But it would seem to me that if I assess the – the role increase for Mr. Langdon, I would have to assess a role increase for all supervisors, and I'm not sure that is appropriate. So I'm not going to assess it in this case. And so, I'm not going to give him a three-level increase for being a supervisor.
>
> So with that said, let me reiterate what I've ruled. I'm going to find that the base offense level is a 34, the obstruction of justice is appropriate, the use of a firearm is appropriate, the criminal history is scored accurately, and he should not be given a three-level increase for his role in the offense.

(CR Dkt. 576, pp. 33-36).

[9] A copy of Langdon's appellate brief was not filed as part of the record in the instant case. The e-brief is available online through the electronic docket of the United States Court of Appeals for the Eleventh Circuit. *See* Case No. 03-15131-II, http://pacer.ca11.uscourts.gov/CHMSDKTP.FWX?DKTNO=200315131. In his appellate brief, Langdon raised the following claim:

Generally, claims raised and disposed of in a previous appeal are precluded from reconsideration in a § 2255 proceeding. *See Davis v. United States*, 417 U.S. 333 (1974); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). "Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under § 2255." *Nyhuis*, 211 F.3d at 1343 (*quoting United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977)); *see also Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (a § 2255 motion is "neither a recapitulation of nor a substitute" for direct appeal; absent changed circumstances of fact or law, the court will not reconsider an issue already decided on direct appeal).

A review of the record demonstrates that Langdon previously raised the issue he now presents in Ground One of the instant motion on direct appeal. The Eleventh Circuit rejected this claim and affirmed his conviction and sentence (CR Dkt. 682). Accordingly, the Court finds that Ground One of the instant § 2255 motion is procedurally barred due to prior resolution by the Eleventh Circuit and cannot be re-litigated on collateral review. *See Nyhuis*, 211 F.3d at 1343.

**Ground Two**

Langdon contends that law enforcement agents violated the "knock and announce" rule when they arrived at his home to arrest him. He claims that on April 11, 2002, agents of the Los Angeles[10] Drug Enforcement Administration Office executed a search warrant for his residence. The officers allegedly stopped Langdon's wife in the driveway, asked if

---

WHETHER THE TRIAL COURT ERRED IN APPLYING AN ENHANCEMENT TO APPELLANT'S SENTENCE FOR USE OF A FIREARM WHEN THERE WAS NO LONGER AN ACTIVE CONSPIRACY AND AN UNSUPPORTED CLAIM OF OBSTRUCTION OF JUSTICE.

[10] Langdon resided and was arrested in California.

Langdon was there, and kicked in the door to the home.  The officers were not denied

access to the house and no exigent circumstances existed to justify kicking in the door.

He contends the officers' entry violated 18 U.S.C. § 3109.[11]  Langdon claims that this

argument was raised in the district court but was untimely filed due to counsel's error and

raised on appeal but was not adjudicated.  He states that "[i]f the Government seeks to

have this argument barred it should be considered under ineffective assistance of counsel."

(CV Dkt. 2, p 5).

To the extent Langdon's claim can be construed as a substantive Fourth

Amendment  claim asserting that his rights were violated during the search of his home,

such a claim cannot proceed.  This issue was raised on direct appeal and rejected by the

Eleventh Circuit.[12]  (CR Dkt. 682).  Accordingly, the Court finds that to the extent Ground

---

[11] This statute reads as follows:

**§ 3109.  Breaking doors or windows for entry or exit**

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109.

[12] Langdon's brief on appeal stated, in relevant part, as follows:

Moreover, the Court violated the Appellant's Fourth Amendment rights by allowing evidence from an illegal search of his residence.  Illegally obtained evidence is inadmissible in the [G]overnment's direct case, or otherwise, as substantive evidence of guilt.  United States v. Havens, 496 U.S. 620 (1980). Further, the Government cannot prove any nexus between the criminal conduct at Appellant's residence that was the subject of the Government's investigation.  United States v. Washington, 266 F.Supp2d (S.D. Ohio 2003).

Further, the Government conducted an illegal search and seizure of the Appellant's residence.  The Government never gathered any evidence that the residence located at 19427 Craigjon Avenue had any drug activity.  There were no eyewitnesses that could state that drugs were being transported in or out of that house.  Moreover, the Government was never denied entrance into this house, rather they stopped the Appellant's wife; asked if the Appellant was home; and then kicked in the door to enter the Appellant's house without his or his wife's consent.  This violated the Appellant's Fourth

Two of the instant § 2255 motion is presented as a Fourth Amendment claim based on the search of Langdon's residence, it is procedurally barred due to prior resolution by the Eleventh Circuit and cannot be re-litigated on collateral review. *See Nyhuis*, 211 F.3d at 1343.

To the extent that Langdon raises this claim as one of ineffective assistance of counsel, it is meritless. He contends in his supporting memorandum (CV Dkt. 2) that [t]his argument was raised in the district court but was filed untimely due to counsel's error." Langdon does not elaborate on this assertion, nor does he articulate when he attempted to raise such an argument or which of his trial attorneys was allegedly deficient in filing an untimely submission to the Court. Moreover, he does not provide any factual support for this claim.

A review of the record shows that Langdon's attorney[13] filed a motion to suppress (CR Dkt. 267) evidence and statements made by Langdon obtained as a result of the Government's alleged violation of Langdon's Fourth Amendment rights and 18 U.S.C. § 3109. Langdon is correct that this motion was denied as untimely. (CR Dkts. 275, 279). Notwithstanding, even assuming *arguendo* that his attorney's failure to timely raise this argument during the course of the trial was deficient, Langdon has failed to demonstrate that such failure prejudiced him in any way. He does not assert nor has he demonstrated that there was any reasonable probability that the outcome of his trial would have been

_____

Amendment rights.

*See* Brief of Appellant Ronald Ray Langdon, Case No.03-15131-II, online docket of the United States Court of Appeals for the Eleventh Circuit at http://pacer.ca11.uscourts.gov/CHMSDKTP.FWX?DKTNO=200315131.

[13] This motion was filed by attorney Kuske.

different had the motion been timely filed.  *See Strickland*, 466 U.S. at 694.  In the absence

of an allegation of prejudice, a claim of ineffective assistance of counsel cannot succeed

because it does not satisfy the requirements of *Strickland*.  Based on Langdon's bare and

conclusory allegations presented in support of his claim, he is not entitled to relief on

Ground Two of this § 2255 motion.  *See Hill v. Lockhart*, 474 U.S. 52 (1985) (conclusory

allegations presented in support of an ineffective assistance of counsel claim are

insufficient to raise a constitutional issue).

**Ground Three**

Langdon claims that the district court erred by admitting text message transcripts at

trial in violation of his Fourth Amendment rights.  He contends that the Government

obtained the transcripts through illegal means by forcing a Skytel employee to conduct a

search and seizure of records of the text messages sent and received by Langdon and his

coconspirators.  Langdon claims that "[t]his claim was not given a 'full and fair opportunity'"

and that the Eleventh Circuit "ignored this contention in its opinion."  (CV Dkt. 2, p. 15).

Finally, Langdon asserts that this claim should not be barred due to counsel's failure to

raise the argument that Langdon requested be raised.

As to Langdon's substantive claim that the district court erred in admitting the

transcripts, this claim has already been raised and disposed of on direct appeal.[14]  In fact,

---

[14] In his appellate brief, Langdon raised the following issue:

WHETHER THE TRIAL COURT ERRED BY ALLOWING TESTIMONY AND EVIDENCE OF TEXT
MESSAGES ALONG WITH EVIDENCE FROM AN ILLEGAL SEARCH OF APPELLANT'S
RESIDENCE, BOTH IN VIOLATION OF THE APPELLANT'S FOURTH AMENDMENT RIGHTS.

*See* Brief of Appellant Ronald Ray Langdon, Case No.03-15131-II, online docket of the United States Court
of Appeals for the Eleventh Circuit at http://pacer.ca11.uscourts.gov/CHMSDKTP.FWX?DKTNO=200315131.

Langdon presents, almost verbatim, the argument presented in his appellate brief as support for this claim of his § 2255 motion. (CV Dkt. 2). A review of the Eleventh Circuit's order affirming Langdon's conviction and sentence clearly shows that, contrary to Langdon's contention presented here, that court considered this claim and rejected it.[15]

---

[15] In its order affirming Langdon's conviction and sentence, the Eleventh Circuit held as follows as to this claim:

*A. The District Court Did Not Abuse Its Discretion When it Admitted Testimony By McCalebb Regarding Text Messages He Received.*

Jones, Langdon, and Cobb argue that the district court abused its discretion when it admitted testimony regarding the text messages from McCalebb's pager. The district court initially suppressed the text message records, which the government obtained by administrative subpoena from Skytel. The district court nevertheless allowed testimony regarding the text messages when McCalebb pleaded guilty and agreed to testify at trial. The district court concluded that McCalebb could waive any privacy right he had with regard to the messages.

"A person has an expectation of privacy protected by the Fourth Amendment if he has a subjective expectation of privacy, and if society is prepared to recognize that expectation as objectively reasonable." United States v. Miravalles, 280 F.3d 1328, 1331 (11th Cir. 2002) (citing Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 516 (1967) (Harlan, J., concurring)). An individual's right to privacy is limited, however. "[T]he Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." United States v. Miller, 425 U.S. 435, 443, 96 S.Ct. 1619, 1624 (1976) limited by statute.

We have not addressed previously the existence of a legitimate expectation of privacy in text messages or e-mails. Those circuits that have addressed the question have compared e-mails with letters sent by postal mail. Although letters are protected by the Fourth Amendment, "if a letter is sent to another, the sender's expectation of privacy ordinarily terminates upon delivery." United States v. King, 55 F.3d 1193, 1995-96 (6th Cir. 1995) (citations omitted). Similarly, an individual sending an e-mail loses "a legitimate expectation of privacy in an e-mail that had already reached its recipient." Guest v. Leis, 255 F.3d 325, 333 (6th Cir. 2001); United States v. Lifshitz, 369 F.3d 173, 190 (2d Cir. 2004). See also United States v. Maxwell, 45 M.J. 406, 418 (C.A.A.F. 1996) ("Drawing from these parallels, we can say that the transmitter of an e-mail message enjoys a reasonable expectation that police officials will not intercept the transmission without probable cause and a search warrant. However, once the transmissions are received by another person, the transmitter no longer controls its destiny."), cited in Guest, 255 F.3d at 333.

The government elicited testimony from McCalebb concerning text messages that he sent or received through his pager. Because the defendants did not have a reasonable expectation of privacy in the text messages received or sent by McCalebb, the district court correctly permitted McCalebb to testify regarding the content of those messages.

The defendants also erroneously argue that the earlier ruling of the district court suppressing the text messages is law of the case and precludes the later decision to permit McCalebb to testify. Whether

Thus, Langdon's contention that the Eleventh Circuit "ignored this contention" is meritless. Moreover, it is not the province of this Court to reevaluate on collateral review a claim that was decided adversely to Langdon by the Eleventh Circuit. *See Davis*, 417 U.S. 333; *Rowan*, 663 F.2d at 1035; *Nyhuis*, 211 F.3d at 1343. Accordingly, the Court finds that Ground Three of the instant § 2255 motion is procedurally barred due to prior resolution by the Eleventh Circuit and cannot be re-litigated on collateral review. *See Nyhuis*, 211 F.3d at 1343.

As to Langdon's contention that this claim should not be barred due to counsel's ineffectiveness in failing to raise the argument as he requested, this contention likewise lacks merit. As the aforementioned discussion of the substance of Ground Three illustrates, appellate counsel[16] clearly set out this argument on direct appeal. To the extent that Langdon's claim can be read to assert that counsel did not present the argument in a manner Langdon may have considered appropriate and that this somehow amounted to ineffective assistance, he is not entitled to relief. He has not established that counsel's performance in presenting this issue on appeal was deficient in any way, nor has he even suggested that the outcome of his appeal would have been different such that his conviction and sentence would not have been affirmed. *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991) (*Strickland* standard of review applies to ineffective assistance

---

McCalebb could testify regarding text messages that he sent and received was a separate issue from whether the government was entitled to use text messages it obtained without a warrant, and the earlier ruling was not law of the case for that issue. McCalebb's testimony did not violate the Fourth Amendment and suppression was not warranted.

(CR Dkt. 682) (emphasis in original).

[16] Langdon was represented at trial and on appeal by Daniel Hernandez.

of appellate counsel claims).    Accordingly, relief on Ground Three will be denied.

**Ground Four**[17]

Langdon claims that his attorneys rendered ineffective assistance prior to trial, during trial and on appeal.   Specifically, Langdon asserts that Kuske labored under a conflict of interest and that he filed two motions to suppress in an untimely manner.   He claims that Hernandez, who was appointed after Kuske's potential conflict of interest was brought to the Court's attention and Langdon requested new counsel, was not familiar with the case and relied upon Kuske's work on the case.   Langdon also asserts that Hernandez failed to raise issues and request rehearings in both the trial and appellate courts, that Hernandez failed to communicate with him and apprise him of new developments in the case as requested, and that Hernandez failed to raise *Apprendi* objections at sentencing. Finally, Langdon claims that "[c]ounsel failed to file [a] motion to dismiss indictment, post res adjudicata [sic], application to the grand jury [sic]" and that "[c]ounsel also failed to take injunction [sic] action to stop admission of evidence ordered inadmissible."  (CV Dkt. 2, p. 14).   Consequently, counsel's ineffectiveness resulted in Langdon's prosecution and conviction upon unlawful evidence.

### A. Ineffective assistance - Attorney Kuske

As to Langdon's claim against Kuske, he first asserts that Kuske labored under a conflict of interest.  Langdon contends that, even though the Court held a hearing to inform him that Kuske was under investigation, it was held approximately eight months after he had retained Kuske to represent him.   He claims this hearing was not held in a timely

---

[17] For purposes of clarity and efficiency, the Court will divide the ineffective assistance of counsel claims raised in Ground Four into separate sub-claims lettered A-B6.

manner and that if he had known of the potential conflict earlier on, he would have sought new counsel.

To the extent that Langdon claims that a conflict of interest rendered Kuske ineffective in his representation of Langdon, the claim is meritless. "A criminal defendant is entitled to conflict-free representation." *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980). "A criminal defendant's right to effective assistance of counsel is violated where the defendant's attorney has an actual conflict of interest that affects the defendant adversely." *Cruz v. United States*, 2006 WL 188947 at *2 (11th Cir. July 11, 2006) (citing *United States v. Rodriguez*, 982 F.2d 474, 477 (11th Cir. 1993)). An "actual conflict" of interest occurs when a lawyer has "inconsistent interests." *See McKee v. United States*, 2007 WL 445446 at *4 (M.D. Ala., Feb. 8, 2007) (citing *Smith v. White*, 815 F.2d 1401, 1405 (11th Cir. 1987); *Freund v. Butterworth*, 165 F.3d 839, 859 (11th Cir. 1999). In order to prove that an actual conflict hindered Kuske's performance, Langdon "must make a factual showing of inconsistent interests" or point to "specific instances in the record" to suggest an actual impairment of Langdon's interests. *Id.* (citing *White*, 815 F.2d at 1404). This he has not done.

In the instant case, an actual conflict of interest existed. However, in order to prevail on this claim of ineffective assistance, Langdon must demonstrate that the conflict adversely affected Kuske's representation. *See United States v. Novaton*, 271 F.3d 968, 1011 (11th Cir. 2001); *Cuyler*, 446 U.S. at 348; *Strickland*, 466 U.S. at 692. Langdon has not demonstrated that Kuske's failure to file the motions to suppress (CR Dkts. 267, 268) in a timely manner was due to any inconsistent interest or divided loyalty. Moreover, his claim that he was not apprised of Kuske's potential conflict of interest prior to the February

19, 2003, *McClain* hearing is flatly refuted by the record. During that hearing, Kuske advised the Court that he had discussed with Langdon the possibility of a *McClain* hearing at the time Langdon retained him. Langdon did not correct or object to this representation that he had been so advised. Moreover, upon the Court's questioning at the hearing, Langdon stated that he and Kuske had discussed the apparent conflict prior to January 6, 2003. Langdon's claim that he would have requested new counsel earlier in the proceedings had he been aware of the potential conflict is refuted by his own statements. He had been aware since at least January 6, 2003, of the potential conflict but did not advise the Court of his desire to have new counsel nor did he move to have new counsel appointed to him prior to the *McClain* hearing.[18] Thus, there is no merit to this portion of Langdon's claim, as he has failed to make a factual showing that any actual conflict adversely affected Kuske's performance during his representation of Langdon. *See Novaton*, 271 F.3d at 1011; *Freund*, 165 F.3d at 860; *Burden v. Zant*, 24 F.3d 1298, 1305 (11th Cir. 1994). Accordingly, Langdon is not entitled to relief on this basis.

### B. Ineffective assistance - Attorney Hernandez

### 1. Familiarity with criminal case

Langdon alleges that Hernandez was ineffective for several reasons. First, he claims that Hernandez was not familiar with his case and that Hernandez relied upon Kuske's work in the course of his representation of Langdon. To the extent that Langdon offers no factual support for this contention and does not articulate how any such reliance

---

[18] "[A] defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests." *Holloway v. Arkansas*, 435 U.S. 475, 483, n. 5 (1978); *see also United States v. Sims*, 143 Fed.Appx. 210, 216 (11th Cir. 2005). Langdon did not waive the conflict of interest; instead, he elected to have new counsel appointed to represent him.

by Hernandez was deficient or prejudicial, he is not entitled to relief on this basis. *See Strickland*, 466 U.S. at 687-88, 394.

### 2. Failure to raise issues in the district and appellate courts

Langdon claims that Hernandez "failed to raise issues and request rehearings in the district court and the [a]ppellate court." (CV Dkt. 16). He asserts that the Court's ruling on his motion to suppress that the *Leon* good faith exception to the exclusionary rule applied as to the search of Langdon's residence was erroneous and that Hernandez did not object to the Court's denial (CR Dkt. 329) of his motion to suppress (CR Dkt. 266). *See United States v. Leon*, 468 U.S. 897 (1984). He further contends that he requested that Hernandez raise this issue on appeal.

As an initial matter, Langdon's contention that Hernandez should have objected to the Court's ruling on the motion to suppress is misplaced. At the time Hernandez was appointed, the Court had already issued its ruling on the motion. The appropriate procedure for challenging the denial of the motion to suppress was to raise the issue on direct appeal, not an objection to the ruling itself in the district court. The record reflects that Hernandez pursued this issue on direct appeal. Consequently, Langdon is not entitled to relief on this basis, nor is he entitled to relief on his claim that Hernandez was ineffective in failing to raise this issue on appeal.

In its order affirming Langdon's conviction and sentence, the Eleventh Circuit held as follows:

1. The District Court Did Not Abuse Its Discretion When It Admitted Evidence Seized From Langdon's House

Langdon argues that the district court erred when it denied his motion to suppress evidence seized during an illegal search of his residence. Although the district court

found that the warrant to search Langdon's residence was not supported by probable cause, the district court found that a good faith exception applied to the search. "Under [the] good faith exception to the exclusionary rule, suppression is necessary only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." United States v. Robinson, 336 F.3d 1293, 1296 (11th Cir. 2003) (quotations and citation omitted).

An affidavit listed two pieces of evidence that supported the warrant:

(1) four Express Mail labels addressed to "R. Langdon" or "R. London" written in what appears to be the same handwriting as some of the labels addressed to McCalebb and addressed to a different address than that which was ultimately searched and (2) a statement that DEA Agent McLaughlin informed him that text messages sent by co-defendant McCalebb identified Langdon as a supplier of six kilograms of cocaine to Preston Dent, an unindicted co-conspirator.

The district court found that reliance on the warrant was in good faith and reasonable, because "the affidavit was not reckless or dishonest or so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

We need not determine whether probable cause existed, because the good faith exception applies here. There is no evidence that the affidavit was dishonest or recklessly prepared, and a reasonable officer could have believed that based on the affidavit that there was probable cause to search Langdon's residence. The district court did not abuse its discretion when it admitted the evidence seized during the search.

(CR Dkt. 682).

The Eleventh Circuit's decision makes it abundantly clear that the issue was presented on direct appeal and squarely addressed. Langdon's claim that Hernandez was ineffective in failing to raise the issue is clearly meritless.

### 3. Failure to communicate

Langdon next claims that Hernandez did not communicate with him and that Hernandez never informed him of new developments in his case as he had requested. Langdon contends that he wrote letters to Hernandez informing him of the issues he

wanted raised on appeal and that he requested that Hernandez "reply to the Government's brief to show how the cases the Government were [sic] using were not on point with [Langdon's] issues." (CV Dkt. 2, p. 19).

As an initial matter, the Court notes that Langdon filed as part of his supplemental memorandum copies of letters from him to Hernandez and responses from Hernandez to him. (CV Dkt. 2, pp. 23-44). Thus, Langdon's contention that Hernandez did not communicate with him and "never" informed him of developments in the case is refuted by Langdon's own submissions.[19] In his letters, Langdon suggested issues for Hernandez to include in his appellate brief and cases he believed Hernandez should have relied upon. Specifically, the letters Langdon submitted related to the issues of the alleged perjury of the witnesses who testified at the grand jury proceedings, the obstruction of justice enhancement applied at his sentencing, an *Apprendi* argument that he was sentenced based on facts not presented to the jury, the search of his residence, and the admission of the text message transcripts. (CV Dkt. 2, pp. 24, 31, 32, 34-25). To the extent that these issues were not meritorious (see discussions of the underlying claims *supra* and *infra* in this Order), Hernandez was not obligated to raise them on appeal. *See Diaz,* 402 F.3d at 1144-45; *United States v. Colon*, 2002 WL 32351175 at *7 (E.D. Pa., Aug. 12, 2002) (counsel was not ineffective in failing to raise issues suggested by defendant where those issues were not meritorious). While Hernandez was obligated to have kept in communication with Langdon, *see* Fla. R. Prof. Conduct 4-1.4(3), (4) ("A lawyer shall keep

---

[19] A review of the correspondence does show, however, that there was some delay in Hernandez's responses to the letters Langdon allegedly sent. Most notably, Hernandez's response dated July 7, 2005, was to Langdon's letter dated April 4, 2005. Hernandez states in his reply to Langdon that he did not receive Langdon's letter until June 27, 2005, as "the first copy did not get to me for one reason or another." (CV Dkt. 2, p. 38).

the client reasonably informed about the status of the matter .. And promptly comply with reasonable requests for information."), Langdon has not demonstrated that any alleged failure by Hernandez to communicate with him or respond to any of his inquiries was prejudicial to the outcome of his appeal. Thus, he is not entitled to relief on this basis.

### 4. Failure to argue *Apprendi* issues at sentencing

Langdon claims that Hernandez failed to argue *Apprendi* issues at sentencing. Langdon's petition and supporting memorandum are devoid of any specificity as to what *Apprendi* issues Langdon thinks Hernandez should have raised.  It appears that the crux of the claim is that Hernandez failed to make objections at sentencing that resulted in Langdon "being sentenced for enhancements not proven to a jury beyond a reasonable doubt."  This claims is meritless.

 Langdon appears to erroneously equate sentencing enhancements to elements of his underlying offense.  Assuming that the "enhancements" Langdon refers to are the obstruction of justice and firearm enhancements applied at sentencing, the application of these enhancements did not trigger an *Apprendi* issue.  In a case where the defendant's sentence is at or below the statutory maximum penalty provided by statute[20], *Apprendi* is not implicated.  *See United States v. Clay*, 376 F.3d 1296, 1301 (11th Cir. 2004) (*citing United States v. Sanchez*, 269 F.3d 1250, 1268 (11th Cir. 2001) ("To repeat the oft-repeated, *Apprendi* explicitly limited its holding to facts 'that increase [ ] the penalty for a crime beyond the prescribed statutory maximum.  Therefore, *Apprendi* has no effect on

---

[20] Title 21, Section 841(b)(1)(A) provides for a maximum term of life imprisonment.  *See* 21 U.S.C. § 841(b)(1)(A).  Section 846 provides that the penalty for conspiracy is the same as that prescribed for the offense that was the object of the conspiracy.  *See* 21 U.S.C. § 846.  Thus, the maximum sentence for violation of this statute, in the instant case, is also life imprisonment.  *Id.*

cases in which a defendant's actual sentence falls within the range prescribed by the statute for the crime of conviction.")). Langdon was sentenced below the statutory maximum for each count of conviction and thus *Apprendi* did not apply. *See* 21 U.S.C. §§ 841(b)(1)(A), 846. Accordingly, Hernandez cannot be deemed ineffective for not raising an *Apprendi* argument at sentencing because there was no such viable argument to make on Langdon's behalf.

Notwithstanding and contrary to Langdon's contention, Hernandez clearly objected at the sentencing hearing to both the obstruction of justice and firearm enhancements. (CR Dkt. 576, pp. 10-14). Hernandez also raised this issue on direct appeal to the Eleventh Circuit. Thus, this allegation of ineffective assistance is completely meritless and Langdon is not entitled to relief.

### 5. Failure to file a motion to dismiss the indictment and take injunctive action

Langdon alleges that he was denied effective assistance of counsel because Hernandez failed to file a motion to dismiss the indictment after the suppression of the text messages. He further alleges that Hernandez was ineffective in failing to take injunctive action to prevent admission of inadmissible evidence.

Langdon provides no factual or legal support whatsoever for this allegation. This claim amounts to no more than a recapitulation of the claim raised in Ground Three relating to the admission of text messages, *supra*, now couched as an ineffective assistance of counsel claim. Langdon has not demonstrated deficient performance by Hernandez, nor has he shown prejudice due to counsel's performance given the Eleventh Circuit's finding that the text messages were admissible. Accordingly, this claim does not warrant relief.

### 6. Failure to request rehearing and untimely filing of petition for writ of

**certiorari**

In his supporting memorandum, Langdon contends that Hernandez failed to request a rehearing of the Eleventh Circuit's decision on his direct appeal and that this error allowed him to be convicted with illegally obtained evidence. He further claims that Hernandez filed an untimely petition for writ of certiorari. Neither of these claims warrant relief.

"[T]he Sixth Amendment does not guarantee effective assistance of counsel in pursuing motions for rehearing after denial of a direct appeal. [T]he right to appointed counsel extends to the first appeal of right, and no further. Thus, the failure of [a] petitioner's counsel to seek rehearing before the [appellate court] cannot constitute ineffective assistance of counsel in violation of the Sixth Amendment." *Ucciferri v. United States*, 2006 WL 1281362 at *3 (M.D. Fla., May 9, 2006) (citing *Alley v. Bell*, 101 F.Supp.2d 588, 665 (W.D. Tenn. 2000), *aff'd*, 307 F.3d 380 (6th Cir. 2002), *cert. denied*, 540 U.S. 839 (2003) (citations omitted) (quotations omitted); *see also Hernandez v. Wainwright* 634 F.Supp. 241, 250 (S.D. Fla. 1986), *aff'd without opinion*, 813 F.2d 409 (11th Cir. 1987) (finding that "a petition for rehearing of an appeal is squarely a discretionary appeal and again is within the purview of the rule established in *Wainwright v. Torna* ... ")). The United States Supreme Court exercises discretionary review over petitions for writ of certiorari. *See* Sup. Ct. R. 10 ("Review on a writ of certiorari is not a matter of right, but of judicial discretion."). Due to the discretionary nature of the Supreme Court's jurisdiction, there is no right to counsel in seeking a writ of certiorari. *See Ross v. Moffitt*, 417 U.S. 600, 617, (1974). Accordingly, Langdon must first establish that he had a right to counsel following the denial of his appeal by the Eleventh Circuit to succeed on either of his claims. *See, e.g., McGill v. United* States, 2006 WL 208863 at *3 (D.S.C., Jan. 25, 2006); *United States*

*v. Becker*, 2005 WL 3110650 at *5 (S.D.N.Y., Nov. 18, 2005); *United States v. Handy*, 20001 WL 640968 at *2 (D. Del., May 30, 2001).

Langdon had no right to counsel beyond the Eleventh Circuit's decision on his direct appeal. *See Mitchell v. United States*, 2007 WL 220174 at *5 (M.D. Fla., Jan. 26, 2007). Any failure by Hernandez to pursue discretionary review in either the Court of Appeals or the Supreme Court was not a violation of Langdon's constitutional rights and therefore any such alleged failure cannot give rise to an ineffective assistance of counsel claim. *See Van Harris v. United States*, 2007 WL 431549 at *5 (S.D.W.Va., Feb. 7, 2007). Moreover, the Court notes that Langdon does not assert that he was prevented from filing a motion for rehearing on his own or that he even requested that Hernandez file a petition for writ of certiorari on his behalf[21], nor does he claim that there was any reasonable probability that any motion for rehearing or petition for writ of certiorari would have been successful. *See Ucciferri*, 2006 WL 1281362 at *4 (citing *Salcedo v. United States*, 1999 WL 335835 at *4 (S.D.N.Y., May 25, 1999) (finding that, even if appellate counsel did not consult with the defendant regarding his appeal or promptly notify him of the affirmance of his conviction, the defendant had failed to show by any reasonable probability that any petition for a writ of certiorari would have succeeded)). Langdon is not entitled to relief on this claim.

**Ground Five**

In his final claim, Langdon asserts that the grand jury unconstitutionally admitted unlawfully obtained evidence in violation of the Electronic Communications Privacy Act

---

[21] In a letter from Hernandez to Langdon dated January 18, 2006, Hernandez advised Langdon that his petition for writ of certiorari was denied by the Supreme Court as untimely. Hernandez points out in the letter that "filing a Petition for Writ of Certiorari was not required of me." (CV Dkt. 2, p. 44).

("ECPA"), 18 U.S.C. § 2515, and 18 U.S.C. § 3504. Langdon contends that the same ECPA evidence declared inadmissible for trial was also inadmissible before the grand jury. He alleges that the grand jury had no legal authority to act on unlawful evidence for the purpose of imposing lawful subject matter jurisdiction proceedings.

Ground Five is not cognizable on collateral review. Section 2255 is not intended to be a substitute for direct appeal. *See Lynn v. United States*, 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) *cert. denied*, 514 U.S. 1112 (1995). Generally, available challenges to a criminal conviction or sentence must be advanced on direct appeal or else they will be considered procedurally barred in a § 2255 proceeding. *See Cummings v. United States*, 2005 WL 1669015 at *2 (M.D. Fla. 2005) (*citing Mills*, 36 F.3d at 1055). "[N]onconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission consistent with the rudimentary demands of fair procedure." *Smith*, 2006 WL 2578919 at *17; *Burke*, 152 F.3d at 1331. The claims raised in Ground Five are non-constitutional in nature and do not provide a basis for collateral relief absent a showing that a denial of relief would result in a miscarriage of justice. *See, Alicea-Torres*, 2006 WL 2849846 at *7; *Hammouda*, 2006 WL 941759 at *3. Langdon has not made this requisite showing. Accordingly, the Court finds that Ground Five of the instant § 2255 motion is not cognizable on collateral review.

Even assuming *arguendo* that the claims raised in Ground Five were cognizable, they are procedurally defaulted. Where a petitioner has failed to raise claims that could and should have been raised at sentencing or on direct appeal, district court review of such claims is barred absent a showing of the procedural default requirements of cause and

27

prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *United States v. Frady*, 456 U.S. 152, 167-70, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982). To show cause for not raising a claim on direct appeal, Langdon must show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim previously. *Lynn*, 365 F.3d at 1235 , n. 20 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). To show prejudice, Langdon must demonstrate that "errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations omitted). To establish actual innocence, Langdon must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. This means factual innocence, not mere legal insufficiency. *Bousley*, 523 U.S. at 623-24.

Langdon has not made any showing of cause and prejudice to overcome the procedural bar as to Ground Five. Furthermore, there is no evidence establishing that he is actually innocent. Therefore, Langdon cannot raise the claims made in Ground Five in this § 2255 motion to vacate and relief will be denied.

Accordingly, the Court orders:

That Langdon's § 2255 motion to vacate (CR Dkt. 705, CV Dkts. 7, 16) is denied. The Clerk is directed to enter judgment against Langdon in the civil case and to close that case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that defendant is not entitled to a certificate of

appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida on February 28, 2007.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Ronald Ray Langdon